On Application far Rehearing
The opinion of June 16, 2006, is with-drawn, and the following is substituted therefor.
Robert David Boles, M.D., and South-eastern Surgical Specialists, Inc., the defendants in this wrongful-death action, appealed, challenging the jury's award of punitive damages against them.[2] We affirm.
On August 17, 1998, Dr. Boles removed a cancerous part of Burl Herman Parris's lung at Northeast Alabama Regional Medical Center ("RMC") in Anniston. The surgery itself went well, and Burl remained at RMC while he recuperated. Dr. Boles continued to treat Burl while Burl was a patient at RMC.
At 4:30 a.m. on September 7, 1998, a nurse telephoned Dr. Boles at his home. She informed him that Burl had "coded," that his respiration and pulse were weak, and that he was non-responsive. Dr. Boles then spoke to an on-duty physician at RMC who told him that Burl was anemic and was suffering from gastrointestinal bleeding. Dr. Boles did not go to the hospital after these conversations. At trial, Dr. Boles testified that this type of bleeding was a potentially fatal surgical problem.
The nurse telephoned Dr. Boles again at 6:30 a.m. to tell him that Burl's respiration, pulse, and blood pressure were at dangerous levels. Dr. Boles did not go to the hospital, nor did he order that Burl be admitted to the intensive-care unit at RMC.
At 8:15 a.m., Dr. Boles received a third telephone call, informing him that other doctors were working to save Burl's life. Dr. Boles testified that after the third call he went to the hospital, where he "look[ed] at the code." However, no one remembered having seen him at the hospital, and no hospital record reflects that he was present at that time. Burl died later that morning.
Randall Parris, the administrator of Burl's estate, sued Dr. Boles; Southeastern Surgical Specialists, Inc., described in the appellants' brief as "Dr. Boles'[s] professional association"; and RMC, alleging *Page 366 
wrongful death. The case went to trial in September 2003. At trial, Dr. Boles testified that if he had gone to the hospital when he received the second telephone call at 6:30 a.m., "I probably could have saved [Burl's] life, quite possibly saved his life." Randall Parris offered expert testimony indicating that Burl's life could have been saved had something been done before approximately 7:30 a.m. Dr. Boles also testified that he lived five minutes from RMC, that he was unoccupied on the morning of Burl's death, and that he deliberately chose not to return to the hospital after the telephone calls.
Before closing arguments, Dr. Boles and Southeastern Surgical Specialists moved the trial court to declare unconstitutional that portion of Alabama's wrongful-death statute that prohibits the apportionment of damages among joint tortfeasors. They also filed a motion asking the trial court to use special verdict forms to allow the jury to apportion any damages it might award among the defendants. The trial court denied both motions.
The jury found for Randall Parris and awarded punitive damages of $1,375 million. The trial court denied Dr. Boles's motion for a new trial or, in the alternative, for a remittitur. However, pursuant to § 11-93-2, Ala. Code 1975, it granted RMC's motion to reduce RMC's liability on the judgment to $100,000.[3] This left Dr. Boles and Southeastern Surgical Specialists liable for the remaining $1,275 million.
Dr. Boles and Southeastern Surgical Specialists appealed. They do not contest liability; nor do they argue that the verdict was excessive or contrary to the evidence. Instead, they argue only that the jury should have been instructed to apportion damages among the three defendants according to their respective culpabilities.
Under the pertinent provisions of the Alabama Code, as amended in 1999, a defendant is liable "only for punitive damages commensurate with that defendant's own conduct" — that is, joint tortfeasors are not jointly and severally liable for an award of punitive damages. §6-11-21(e), Ala. Code 1975. However, through an amendment in 1999, the Alabama Legislature specifically excepted wrongful-death actions from this rule. § 6-11-21(j), Ala. Code 1975. Moreover, even before the adoption of the current version of § 6-11-21, this Court did not permit juries to apportion damages in wrongful-death actions. Campbell v.Williams, 638 So.2d 804, 812 (Ala. 1994). The long-standing law of this State has neither required nor allowed the apportionment of punitive damages in the context of a wrongful-death action. See Black Belt Wood Co. v. Sessions,514 So.2d 1249 (Ala. 1986) (describing the "long-standing rule" of nonapportionment in wrongful-death actions); see also Bellv. Riley Bus Lines, 257 Ala. 120, 57 So.2d 612 (1952).
Dr. Boles and Southeastern Surgical Specialists acknowledge that the apportionment of punitive damages in wrongful-death actions is contrary to existing Alabama caselaw. They argue, however, that "neither stare decisis nor legislative deference should preclude this Court from abandoning its nonapportionment rule." Instead, they argue, the Court should disregard *Page 367 
the plain meaning of the statute because it "conflicts with the purpose of punitive damages" and is "disharmonious with public policy."
However, it is well established that the legislature, and not this Court, has the exclusive domain to formulate public policy in Alabama. Leonard v. Terminix Int'l Co.,854 So.2d 529, 534 (Ala. 2002). The legislature is presumed to be aware of existing law and judicial interpretation when it adopts a statute. Ex parte Haynes Downard Andra Jones, LLP, 924 So.2d 687, 699 (Ala. 2005). By creating a specific exception in § 6-11-21(j) and preserving the judicially created rule, the legislature has spoken clearly in favor of nonapportionment in wrongful-death cases.
Dr. Boles and Southeastern Surgical Specialists also argue that nonapportionment of punitive damages violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[4] They have failed to cite any case that states this proposition, and we have found none. Instead, they rely on dissenting opinions and largely unrelated "substantive due process" cases.[5] They also point to other jurisdictions in which courts have decided that apportionment of punitive damages among joint tortfeasors is "preferable" to nonapportionment. However, those decisions do not support the conclusion that apportionment is constitutionally mandated; in fact, they lead to the opposite conclusion. If apportionment were constitutionally mandated, the question of "preference" would be moot. Moreover, as discussed above, the Alabama Legislature's decision to enact a statute continuing nonapportionment of punitive damages in wrongful-death cases precludes any consideration of whether another rule might be "preferable."
The argument that the punitive damages in this case should be apportioned among the defendants not only is unsupported by significant authority, but also is directly contrary to the existing authority in this area. InCampbell v. Williams, 638 So.2d 804, 811 (Ala. 1994), this Court stated that "nonapportionment of punitive damages among multiple defendants in wrongful death cases bears a rational relationship to a legitimate state interest — the prevention of homicide — and it thus does not violate constitutional guarantees." The argument advanced by Dr. Boles and Southeastern Surgical Specialists is also inconsistent with the United States Supreme Court's Fourteenth Amendment jurisprudence. In Louis Pizitz Dry Goods Co. v.Yeldell, 274 U.S. 112, 47 S.Ct. 509, 71 L.Ed. 952 (1927), an earlier due-process challenge to an Alabama wrongful-death statute, the jury awarded punitive damages against an employer based on the negligence of an employee. The employer itself was not at fault. Nevertheless, the Court held that the award of *Page 368 
punitive damages against the employer did not violate due process:
 "We cannot say that it is beyond the power of a Legislature . . . to attempt to preserve human life by making homicide expensive. It may impose an extraordinary liability such as the present, not only upon those at fault but upon those who, although not directly culpable, are able nevertheless, in the management of their affairs, to guard substantially against the evil to be prevented."
274 U.S. at 116, 47 S.Ct. 509. Even if we were to assume that Dr. Boles's and Southeastern Surgical Specialists' share of the judgment against them is disproportionate to their fault — and this is by no means clear from the record — the judgment does not violate due process under long-standing precedent.[6]
The award of punitive damages against Dr. Boles and Southeastern Surgical Specialists is consistent with the Alabama Code, and it does not violate the United States Constitution. The judgment of the trial court is affirmed.
APPLICATION OVERRULED; OPINION OF JUNE 16, 2006, WITH DRAWN; OPINION SUBSTITUTED; AFFIRMED.
SEE, HARWOOD, STUART, and BOLIN, JJ., concur.
[2] On December 2, 2005, while this appeal was pending, counsel for Dr. Boles and Southeastern Surgical Specialists, Inc., filed in this Court a suggestion of death, stating that Dr. Boles had died on or about October 25, 2005. "When the death of a party has been suggested, the proceeding shall not abate, but shall continue or be disposed of as the appellate court may direct." Rule 43(a), Ala. R.App. P. Because Southeastern Surgical Specialists remains a party, and because the judgment survives against the personal representative of Dr. Boles's estate, § 6-5-462, Ala. Code 1975, there remains a justiciable controversy.
[3] "The recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for bodily injury or death for one person in any single occurrence." §11-93-2, Ala. Code 1975. `"Governmental entity' shall also mean county or city hospital boards when such boards are instrumentalities of the municipality or county or organized pursuant to authority from a municipality or county." §11-93-1, Ala. Code 1975. The parties agree that RMC is such an entity and that RMC's liability was properly limited to $100,000 in accordance with § 11-93-2.
[4] In the final paragraph, the appellants' brief concludes that nonapportionment also violates the Due Process Clause of the Alabama Constitution. They cite no authority, however, to support this argument. "`"When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court's duty nor its function to perform an appellant's legal research." University of South Alabama v. Progressive Ins.Co., (Ala. 2004) (quoting Ex parte Showers,812 So.2d 277, 281 (Ala. 2001), quoting in turn City ofBirmingham v. Business Realty Inv. Co., 722 So.2d 747, 752
(Ala. 1998)).
[5] Dr. Boles and Southeastern Surgical Specialists do not argue that the amount of the punitive-damages award is so excessive that it violates the Due Process Clause. Cf. BMWof North America v. Gore, 517 U.S. 559, 116 S.Ct. 1589,134 L.Ed.2d 809 (1996).
[6] This is also consistent with the criminal-law principle that all parties to the same criminal offense are subject to the same range of punishment, regardless of their individual degree of culpability. An accomplice may therefore be punished as severely, or even more severely, than a more culpable offender.McGinnis v. State, 382 So.2d 605, 609 (Ala.Crim.App. 1979); see § 13A-2-23, Ala. Code 1975.