SHAW, Justice
(concurring in part and concurring in the result).
These cases present the very narrow issue whether the word “child” in Ala.Code 1975, § 26-15-3.2, the “chemical-endangerment statute,” includes an unborn child or fetus. Section 26-15-3.2(a) provides:
“(a) A responsible person commits the crime of chemical endangerment of exposing a child to an environment in which he or she does any of the following:
“(1) Knowingly, recklessly, or intentionally causes or permits a child to be exposed to, to ingest or inhale, or to have contact with a controlled substance, chemical substance, or drug paraphernalia as defined in Section 13A-12-260....
“(2) Violates subdivision (1) and a child suffers serious physical injury by exposure to, ingestion of, inhalation of, or contact with a controlled substance, chemical substance, or drug paraphernalia. ...
“(3) Violates subdivision (1) and the exposure, ingestion, inhalation, or contact results in the death of the child....”
On January 31, 2009, Hope Elisabeth Ankrom gave birth to a son, B.W. The evidence at trial indicated that Ankrom tested positive for cocaine prior to giving birth and that the child tested positive for cocaine after his birth. Medical records showed that Ankrom had tested positive for cocaine and marijuana on more than one occasion during her pregnancy. An-krom was charged with and pleaded guilty to violating § 26-15-3.2(a)(l) in that she knowingly, recklessly, or intentionally caused or permitted B.W. to be exposed to, to ingest or inhale, or to have contact with a controlled substance, namely, cocaine.[31]
The evidence at the trial of Amanda Helaine Borden Kimbrough indicated that she ingested methamphetamine while pregnant with her son, Timmy. He was born prematurely during the 25th week of the pregnancy and died 19 minutes after birth from acute methamphetamine intoxication. Kimbrough was charged with, and pleaded guilty to, violating § 26-15-3.2(a)(3) in that she knowingly, recklessly, or intentionally caused or permitted Timmy to be exposed to, to ingest or inhale, or to have contact with a controlled substance, namely, methamphetamine,[32] which resulted in his death.
The only issue involved in these two appeals is whether B.W. and Timmy were each a “child” within the meaning of § 26-15-3.2(a).
“In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
“ ‘ “Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unam *431 biguous, then there is no room for judicial construction.
DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275 (Ala.1998) (quoting Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998), quoting in turn I MED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)).
I see no patent or latent ambiguity in the word “child”; it is not a term of art and contains no inherent uncertainty. This Court’s most cited dictionary defines “child” as “an - unborn or recently born person.” Merriam-Webster’s Collegiate Dictionary 214 (11th ed. 2003). The venerable Oxford English Dictionary defines “child” as an “unborn or newly born human being; foetus, infant.” Ill The Oxford English Dictionary 113 (2d ed. 1989). See also Webster’s Third New International Dictionary 388 (2002) (defining “child” as “an unborn or recently born human being”). The language of the Code section is clear; there is nothing to construe, no need to attempt to divine the “intent” of the legislature, and no need to search the Code for examples of its usage. Clearly, B.W. and Timmy were each a “child” under § 26-15-3.2 when they were exposed to, ingested, inhaled, or had contact with a controlled substance.
Some of the arguments made in these cases or concerns expressed by the Justices are premised on hypothetical situations,[33] different from the facts before us, in which the Code section might be either unconstitutional as applied or seemingly unwise in its application. It goes without saying that we cannot strike down the application of the Code section in An-krom’s and Kimbrough’s cases merely because the Code section might be unconstitutionally applied in some other context.[34] It is not the role of this Court to sit in judgment of the wisdom of the enactments of the Alabama Legislature, and “ ‘[i]t is well established that the legislature, and not this Court, has the exclusive domain to formulate public policy in Alabama.’ ” Suttles v. Roy, 75 So.3d 90, 104 (Ala.2010) (Shaw, J., concurring specially and quoting Boles v. Parris, 952 So.2d 364, 367 (Ala.2006)). See also Ala. Const.1901, Art. Ill, § 43.
I concur with the main opinion’s holding that the word “child” as used in § 26-15-3.2 includes an unborn child. As to the remainder of the opinion, I concur in the result.

. “Controlled substance” for purposes of § 26-15-3.2 is defined by Ala.Code 1975, § 26-15-2(2), which refers to Ala.Code 1975, § 20-2-2(4), which in turn refers to, among other Code sections, Ala.Code 1975, § 20-2-25, which defines cocaine as a Schedule XI controlled substance.

. Methamphetamine is a Schedule III controlled substance. See Ala.Code 1975, § 20-2-27.

. The Chief Justice's example in his dissent of a woman, not knowing she was pregnant, being prosecuted for drinking wine is inappo-site. Wine is not a controlled substance, chemical substance, or drug paraphernalia as those terms are defined in the Code, and the mens rea provisions of § 26-15-3.2 would arguably require that a defendant know that a child is present. Such mens rea requirement would also arguably not be satisfied in the situation where an expectant mother is administered a prescription drug under the direction of a physician; it is difficult to conclude that the requisite criminal intent exists where a woman- — in good faith — acts in accord with the superior medical knowledge of her treating physician. Thus, no exception for physician-prescribed controlled substances would appear to be necessary.

. This Court did not grant the petition for a writ of certiorari to review the constitutionality of § 26-15-3.2.